**REDACTED**

Perry S. Clegg (USB 7831)
    pclegg@kba.law
**KUNZLER BEAN & ADAMSON, PC**
50 W. Broadway, Suite 1000
Salt Lake City, UT 84101
Tel.: (801) 994-4646
Fax: (801) 531-1929

*Attorneys for Plaintiff,*
Modern Font Applications LLC

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| MODERN FONT APPLICATIONS LLC, a Utah limited liability company,<br><br>        Plaintiff,<br><br>   v.<br><br>ALASKA AIRLINES, INC., an Alaska corporation,<br><br>        Defendant. | Case No. 2:19-cv-00561-DBB-CMR<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING MOTION TO COMPEL SETTLEMENT AGREEMENTS**<br><br>Judge David Barlow<br><br>Magistrate Judge Cecilia M. Romero<br><br><u>Jury Trial Demanded</u> |

**<u>PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING
MOTION TO COMPEL SETTLEMENT AGREEMENTS</u>**

Page 1

Pursuant to the Court's order at the hearing of October 19,[1] Plaintiff submits this brief in opposition to Defendant's motion to compel settlement agreements (ECF No. 63). The Court should deny the motion to compel, because the requested settlement agreements are both (a) protected by the common interest privilege, and (b) not relevant. And Defendant admitted that it seeks the agreements for an improper purpose, i.e., settlement leverage. If the Court does not deny the motion based on the briefing, Plaintiff requests a further hearing to address these issues.

I.   **The Settlement Agreements Are Subject to the Common Interest Privilege**

*(Notably, the terms of certain agreements that Plaintiff has entered do not permit Plaintiff to publicly acknowledge the existence of the agreements; so Plaintiff does not confirm herein whether any particular agreement exists, but does confirm that the plural term "settlement agreements" is appropriate here. Plaintiff is willing to submit the agreements or a listing thereof for in camera review if the Court requires further specificity.)*

The requested settlement agreements are protected by the common interest privilege. Federal (not state) common law of privilege applies because this is a patent case. Fed. R. Evid. 501. In a patent case, the District of Kansas wrote, "'for the common interest doctrine to attach, most courts . . . insist that the two parties have in common an interest in securing legal advice related to the same matter and that the communications be made to advance their shared interest in securing legal advice on that common matter. The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.'" *High Point v. Sprint Nextel*, No. 09-2269, 2012 U.S. Dist. LEXIS 8435, at *22-24 (D. Kan. Jan. 25, 2012). The Court distinguished that standard, stating "those cases were not patent cases" and held "Instead, the Court will require Avaya to show a substantially identical legal interest … as used in the Federal Circuit's decision…" *Id.* at *33. "[W]here both commercial and legal interests are intertwined, the legal interest is sufficient to establish the legal requisite community of interest. *High Point*,

---

[1] As discussed at the hearing, the issue before the Court is solely whether the settlement agreements should be produced, and not whether the interrogatory should be answered or whether related documents and communications should be produced. If either of those further questions were at issue, additional objections including attorney-client privilege and excessive interrogatory subparts would also need to be addressed.

Page 2

2012 U.S. Dist. LEXIS 8435, at *27 (citing *In re Regents*, 101 F.3d 1386, 1389 (Fed. Cir. 1996)). The *High Point* court found that even though the parties had adverse interests during negotiations, the common legal interests were enough to protect the exchanged communications. *Id.* at *35 ("... sufficient to establish their common interest in the communications exchanged.").

Where a patentee and potential licensee have a "substantially identical" legal interest due to the potential for an exclusive license agreement, a community of interest exists. *In re Regents*, 101 F.3d at 1390. Seeking legal advice to "avert litigation" may also fall within the scope of common interest. *Id.* at 1391 (citing *Upjohn v. United States*, 449 U.S. 383, 389 (1981)). As one court noted in shielding documents exchanged between patent owner and potential purchaser or licensor under common interest, "Unless it serves some significant interest courts should not create procedural doctrine that restricts communications between buyers and sellers, erects barriers to business deals, and increases the risk that prospective buyers will not have access to important information ..." *Britesmile, Inc. v. Discus Dental*, Nos. C 02-3220, 2004 U.S. Dist. LEXIS 20023, at *9 (N.D. Cal. Aug. 10, 2004) (denying motion to compel). The Tenth Circuit, considering an insurance case, found a common interest in pursuing settlement, "The parties have a common interest in settling the lawsuit if they can do so for less than it would cost them if the case went to trial." *Magnum Foods v. Cont'l Cas. Co.*, 36 F.3d 1491, 1508 (10th Cir. 1994).

The requested settlement agreements ███████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
█████████████████████████████████████ Thus, the privilege remains.

The parties have common legal interests in negotiating and implementing legal protection

Page 3

favorable to both parties, including at least: ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████ *Id.* at ¶10.

Additional briefing, likely *in camera*, will be needed to more fully explain these interests.

## II.     The Settlement Agreements Are Not Relevant and Production Will Be Prejudicial

Further, because the settlement agreements are not admissible, are not relevant, and are sought for improper purposes (i.e., settlement leverage), the motion should be denied. Under Fed. R. Civ. P. 26(b)(1), discovery is limited to "nonprivileged matter that is <u>relevant</u> to any party's claim or defense." (emphasis added). Information "within this scope" need not be admissible to be discoverable. *Id.* Thus, the hurdle of relevance must be overcome before admissibility becomes an issue; relevance has not been shown here.

In 1889, the Supreme Court set forth the relevance law, which has not been overruled, "It is clear that a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement." *Rude v. Westcott*, 130 U.S. 152, 164 (1889). The Supreme Court has not altered this rule. Defendant's relevance argument directly contradicts the Supreme Court: "Licensing documents, including settlements, reflect the value of the technology claimed in the Patent-in-Suit and thus are highly probative of the potential damages at issue."[2] ECF No. 63 p.2. But Defendant did not address *Rude*, though Plaintiff's objections included the above quote. ECF No. 63-1 p. 6. And Defendant refused to meet-and-confer to explain why its position is directly contradictory to *Rude*. ECF No. 64 p. 2.

In 2017, in clear dicta, a panel of the Federal Circuit addressed *Rude*. *Prism Techs. v.*

---

[2] Defendant speculates that the settlements "reflect admissions" about "a reasonable royalty" or patent "scope and invalidity." They do not. This is baseless speculation. An *in camera* review would quickly reveal as much.

Page 4

*Sprint Spectrum*, 849 F.3d 1360, 1373 (noting that Sprint waived "*Rude*-based" argument in district court and argued inconsistently). Defendant hangs its hat on *Prism*, though a panel of a Circuit Court cannot overrule the Supreme Court in dicta or otherwise. And consideration of the factors set forth in *Prism* further confirms that Plaintiff's settlement agreements are not relevant.

In *Prism*, the admitted agreement was executed after all discovery, after trial, and after litigation costs were sunk. *Id.* at 1371. Here, all settlement agreements were early, making them irrelevant. Oliver Decl. ¶11. The *Prism* court noted that possible non-liability makes settlements too low. 849 F.3d at 1371. Possible non-liability was present in all of Plaintiff's agreements. In *Prism*, the party seeking to exclude a Prism license also sought admission of other Prism licenses into evidence. *Id.* at 1370-71. Here, Plaintiff seeks to shield <u>all</u> of its settlements. In *Prism*, the party seeking to admit licenses waived the *Rude* and Fed. R. Evid. 408 objections. Here, both are preserved and both block admission of settlement agreements; the inadmissible agreements are therefore irrelevant, because they cannot be used as evidence.

The *Elbit* case recently confirmed that settlement agreements like Plaintiff's agreements are <u>not</u> relevant. *Elbit Sys. v. Hughes Network Sys.*, 927 F.3d 1292, 1299 (Fed. Cir. 2019) ("Not every settlement will be relevant."). *Elbit* admonishes that the facts "must be carefully considered." *Id.* *Elbit* pointed to considerations demonstrating that settlements are not relevant. *Id.* (referring to "state of the earlier litigation when settled"). *Elbit* does not consider *Rude*.

Other cases addressing licenses don't rule differently. In *Summit 6 v. Samsung*, the plaintiff sought to rely on two of its own settlement agreements. 802 F.3d 1283, 1299 (Fed. Cir. 2015). One was disregarded and admission of the other was not challenged. *Id.* at 1300. Obviously, where a plaintiff was relying on its own agreements, it did not challenge relevance. In *Rembrandt v. Samsung*, the district court "redacted" "confidential business information", including "allocated payments." 853 F.3d 1370, 1381 (Fed. Cir. 2017). Also, *Rembrandt* relied

on a non-existent analysis of relevance in *Summit 6* and did not consider *Rude v. Westcott*.

Showing relevance of settlement agreements is a high hurdle. Defendants cannot cross it here, and the agreements are outside the scope of "relevant" discovery permitted by Rule 26.

**III.     If the Court Requires Production of the Settlement Agreements, Plaintiff Should be Permitted to Redact Everything Except the License Grant and the Marking Provision**

Though the settlement terms are not relevant, the issue of marking in compliance 35 U.S.C. sec. 287 may be at issue. Marking does not relate to dollar figures in the agreements. In fact, Plaintiff already identified (in interrogatory responses) all parties relevant to ongoing marking and produced documents. Thus, the settlement agreements aren't needed to prove marking. And if Defendant insists that the marking terms are relevant, other terms are irrelevant.

Further, Defendant seeks the agreements for purposes not related to "relevance" under Rule 26. Instead, Defendant has admitted that it seeks the terms of the agreements, not for litigation purposes, but for the bad faith purpose of negotiating a favorable settlement, admitting:

> Alaska cannot engage in reasonably informed settlement discussions without knowing the terms under which MFA has resolved other comparable claims.

ECF No. 64-1 p. 4. There is no basis under Rule 26 to require production to help a party gain leverage in settlement discussions. Using discovery to learn how other parties settled is a bad faith use of discovery and is not "relevant to any party's claim or defense" as required by Fed. R. Civ. P. 26(b)(1) (limiting "scope" of discovery to information that is "relevant to any party's claim or defense…"). *See, e.g., Ford v. Leggat*, 904 S.W.2d 643, 649 (Tex. 1995) ("... Whites' purpose in pursuing discovery of the amounts of settlement is to determine a settlement strategy for their own case. That is not a proper purpose of discovery, and we specifically disapprove of the request for the information under these circumstances."). Monetary terms of the settlement agreement have no bearing on the terms that Plaintiff may negotiate with Defendant. If production is required, redaction of monetary terms should be permitted.

**REDACTED**

Dated: October 28, 2020 Respectfully submitted,

By:    */s/ Perry S. Clegg*

        Perry S. Clegg (USB 7831)
            pclegg@kba.law
        **KUNZLER BEAN & ADAMSON, PC**
        50 W. Broadway, Suite 1000
        Salt Lake City, UT 84101
        Tel.: (801) 994-4646
        Fax: (801) 531-1929

        *Attorneys for Plaintiff,*
        Modern Font Applications LLC

## CERTIFICATE OF SERVICE

      I hereby certify that on October 28, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court for the District of Utah, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                                    */s/ Perry S. Clegg*
                                                    Perry S. Clegg