IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MODERN FONT APPLICATIONS, <br><br> Plaintiff, <br><br> v. <br><br> ALASKA AIRLINES, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER RE: DISCOVERY MOTIONS <br><br> Case No. 2:19-cv-00561-DBB-CMR <br><br> District Judge David Barlow <br><br> Magistrate Judge Cecilia M. Romero |

Before the court is a Motion to Compel Settlement Agreements (ECF 63) and two Motions to Maintain Protective Order Designations (ECF 52; ECF 84) filed by Defendant Alaska Airlines (Defendant). Also before the court is a Motion to Amend Standard Protective Order (ECF 87) filed by Plaintiff Modern Font Applications (Plaintiff). On October 19, 2020, the court heard argument on all pending discovery motions, took these four motions under advisement, and ordered supplemental briefing (ECF 103). The parties each submitted a supplemental brief on issues relating to production of settlement agreements (ECF 106; ECF 112) and a combined supplemental brief on issues relating to protective order designations and amendment of the protective order (ECF 107; ECF 113). Having carefully considered the arguments of the parties as well as the relevant filings and case law, the court enters the following Memorandum Decision and Order.

## I.    DISCUSSION

### A.    Defendant's Motion to Compel Settlement Agreements

Defendant requests the production of settlement license agreements between Plaintiff and third parties relating to the '421 Patent (the Patent-in-suit) (ECF 63). In Defendant's initial

motion, Defendant requested that the court compel production of: (1) "all licenses," including outbound licenses, in response to initial disclosures, (2) information concerning the license, transfer, assignment, or receipt of any interest in the Patent-in-suit in response to Interrogatory No. 8; (3) document communications between Plaintiff and third parties regarding the Patent-in-Suit in response to Request for Production No. 1; and (4) documents relating to the license, transfer, assignment or receipt of any interest in the Patent-in-suit in response to Request for Production No. 9 (*id.*).  Plaintiff's opposed these requests on numerous grounds (ECF 64).  However, Defendant's supplemental brief clarified that Defendant is only requesting "settlement license agreements" relevant to "determining a reasonable royalty" for the Patent-in-Suit (ECF 112 at 3).  The documents requested appear to be most clearly responsive to Request for Production No. 9, with the remaining of the discovery requests being far broader.  The court therefore **DENIES IN PART** Defendant's Motion to Compel (ECF 63) as to initial disclosures, Interrogatory No. 8, and Request for Production No. 1.

The court will turn its consideration of the parties' arguments to those relevant to Defendant's narrow request for settlement license agreements in response to Request for Production No. 9.  Plaintiff opposes this request on two main grounds: (1) the common interest privilege; and (2) relevancy (ECF 106 at 2).  The court will address each objection in turn.

    1.    <u>Common Interest Privilege</u>

"The protection of communications among clients and attorneys 'allied in a common legal cause' has long been recognized" and "has previously arisen in connection with patent rights." *In re Regents of University of California*, 101 F.3d 1386, 1389 (Fed. Cir. 1996).  In patent cases, "the Federal Circuit has required the entities exchanging the privileged material to have a substantially identical legal interest, as opposed to a solely commercial interest." *High*

*Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2012 WL 234024, at *7 (D. Kan. Jan. 25, 2012) (citing *In re Regents*, 101 F.3d at 1389). "An exception to the assertion of the common interest privilege exists when the participants in the common interest become adverse to each other in litigation." *Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 295 (N.D. Ill. 2005).

Here, Plaintiff argues that the settlement agreements are protected by the common interest privilege because Plaintiff and the third parties who entered these agreements "have common legal interests in negotiating and implementing legal protection favorable to both parties" (ECF 106 at 3–4). In support, Plaintiff relies on cases involving sales of patents and exclusive patent licenses. *See Britesmile, Inc. v. Discus Dental*, No. C 02-3220, 2004 WL 2271589, at *2 (N.D. Cal. Aug. 10, 2004) (patent sale); *High Point*, 2012 WL 234024, at *1 (patent sale); *In re Regents*, 101 F.3d at 1388 (exclusive license). Defendant responds that these cases are inapposite and the common interest privilege is inapplicable because this case involves non-exclusive patent licenses between parties who were adverse to each other in litigation (ECF 112 at 6).

The court agrees with Defendant. In the cases cited by Plaintiff involving the sale of a patent, the patentee and prospective patent purchasers "had a substantially identical common legal interest in the validity, enforceability, and potential for infringement of the patents-in-suit." *High Point*, 2012 WL 234024, at *9. Similarly, in the cases involving an exclusive license agreement, "the inventor/patentee and potential licensee had a 'substantially identical' legal interest in the subject of the communication—valid and enforceable patents—because of the potentially and ultimately exclusive nature of their license agreement." *Id.* at *7 (citing *In re Regents*, 101 F.3d at 1389). These legal interests are not applicable to this case because Defendant is requesting non-exclusive license agreements entered for the purpose of settling

3

litigation.  The court is not persuaded that an interest in implementing legal protections favorable to both parties in a settlement agreement to resolve active litigation is sufficient to warrant protection by the common interest privilege.  Concluding otherwise would contravene clear authority that an exception to the common interest privilege is when the parties become adverse to each other in litigation.  *See Dexia*, 231 F.R.D. at 295.  The court therefore concludes that the common interest privilege is inapplicable in this case because Plaintiff and the third parties who entered the settlement agreements were adverse to each other in litigation and Plaintiff has failed to identify any authority supporting a substantially identical legal interest under these circumstances.

        2.     <u>Relevance</u>

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  "Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a party's claim or defense."  *Dutcher v. Bold Films LP*, No. 2:15-CV-110-DB-PMW, 2017 WL 1901418, at *1 (D. Utah May 8, 2017) (citation and internal quotation marks omitted).

Here, Defendant relies on authority from the Federal Circuit and other courts holding that settlement agreements can be relevant to the issue of a reasonable royalty for calculation of patent damages (ECF 112 at 2).  In patent infringement cases, damages are calculated by determining a reasonable royalty.  *See* 35 U.S.C. § 284 (providing that upon a finding of patent infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by

4

the infringer"). A reasonable royalty is determined using the "the hypothetical negotiation approach, which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'" *Summit 6, LLC v. Samsung Electronics Co., Ltd.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)).

As noted by Defendant, the Federal Circuit has therefore recognized that in patent infringement cases "settlement agreements can be pertinent to the issue of reasonable royalties." *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869–73 (Fed. Cir. 2010)). Further, "'other courts have routinely recognized that license agreements relating to the patent-in-suit, and entered into in connection with settlement, are discoverable' despite a plaintiff's confidentiality concerns." *Pandora Jewelry, LLC v. Bajul Imports, Inc.*, No. 1:10-cv-135-SNLJ, 2011 WL 976623, at *2 (E.D. Mo. Mar. 17, 2011) (quoting *Wyeth v. Orgenus Pharma Inc.*, No. 09-3235, 2010 WL 4117157 (D.N.J. Oct. 19, 2010) (collecting cases)). Construing relevancy broadly, these cases make clear that prior settlement and licensing agreements between Plaintiff and third parties relating to the Patent-in-Suit are relevant to the issue of determining a reasonably royalty in this case. The court therefore finds that Defendant has demonstrated that these documents, including their monetary terms, are relevant and discoverable under Rule 26 for this purpose.[1] Though not addressed by the parties, the court further finds that discovery of these documents is proportional to the needs of this case in light of the importance of determining a reasonable royalty to calculating patent damages.

---

[1] Plaintiff argues that Defendant is requesting the settlement agreements for the improper purpose of negotiating a favorable settlement in this case and requests redaction of monetary terms from the settlement agreements (ECF 106 at 6). In light of the court's finding that Defendant has made a good faith showing that the settlement agreements, including monetary terms, are relevant under Rule 26, the court will not inquire into any other alleged motives for making this discovery request and denies the request to redact.

The court disagrees with Plaintiff's argument that the settlement agreements are not relevant because of Supreme Court authority holding that settlements are not relevant to determining damages in other cases of infringement (ECF 106 at 4). Plaintiff relies on dicta in the 1889 *Rude* case stating that "[i]t is clear that a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement." *Rude v. Westcott*, 130 U.S. 152, 164, 9 S.Ct. 463, 32 L.Ed. 888 (1889). As explained above, the Federal Circuit has since recognized that "prior settlements can be relevant to determining damages," but an important limitation is that for purposes of admissibility, "the prior licenses or settlements need to be 'sufficiently comparable' for evidentiary purposes and any differences in circumstances must be soundly accounted for." *Elbit Systems Land and C4l Ltd v. Hughes Network Systems, LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019) (quoting *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014)). The *Elbit* case makes clear that the Federal Circuit does not authorize the use of prior settlements as a "standard" to measure damages, but rather, has carefully defined when prior settlements may be relevant and admissible for the purpose of calculating damages.[2] The court therefore disagrees that Federal Circuit authority improperly overrules or is inconsistent with dicta in *Rude*.

For these reasons, the court **GRANTS IN PART** Defendant's Motion to Compel (ECF 63) as to settlement and licensing agreements relating to the Patent-in-Suit and relevant to the issue of a reasonable royalty in response to Request for Production No. 9.

---

[2] The court does not address the issue of whether the settlement and licensing agreements will ultimately be admissible at trial. Plaintiff may challenge the admissibility of these documents at the appropriate time.

6

B.      **Protective Order Motions**

Defendant's Motions to Maintain Protective Order Designations request that the court maintain the designation of Confidential Information – Attorneys' Eyes Only (AEO) for computer source code produced by Defendant (ECF 52; ECF 84).[3] Plaintiff's Motion to Modify Standard Protective Order asks the court to amend the standard protective order to allow its in-house counsel to access all disclosed information including source code (ECF 87 at 2). Courts use a balancing test to decide the degree of protection required in a protective order. "Where trade secrets or other confidential commercial information is involved, the court will balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution or defense of the claims." *Nutratech, Inc. v. Syntech Int'l*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)). In other words, even if a risk of inadvertent disclosure exists, the court "must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1380 (Fed. Cir. 2010). "In balancing these conflicting interests, the district court has broad discretion to decide what degree of protection is required." *Id.* (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). The court will therefore consider the competing interests of the parties in deciding their respective motions.

1.      Defendant's Motions to Maintain Protective Order Designations

Generally, "[t]he party seeking a protective order has the burden to demonstrate good cause" and "must show good cause for each document." *Martinez v. City of Ogden*, No. 1:08-cv-

---

[3] The court already admonished both parties to not submit duplicate motions essentially addressing the same issue and further belaboring arguments. As indicated at the October 19 hearing, going forward the court will not entertain duplicate motions.

00087-TC-DN, 2009 WL 424785, at *2 (D. Utah Feb. 18, 2009) (citation and internal quotation marks omitted). "Attorney's-eyes-only protection is usually employed to protect against business harm that would result from disclosure of sensitive documents to a competitor." *Id.* To maintain this designation, the moving party "must first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful." *See Centurion Indus. v. Steurer*, 665 F.2d 323, 325 (10th Cir. 1981).

Here, Defendant claims that it "would suffer significant economic injury from unauthorized disclosure" of its source code (ECF 52 at 3) because it constitutes competitive, proprietary code, and contains highly sensitive technical information including "extremely valuable operations, functions, and know-how" (ECF 84 at 3), especially since the court has ordered production of complete source code (ECF 113 at 3). Plaintiff opposes the AEO designation on the ground that Defendant's conclusory arguments fail to meet its burden to show good cause for this designation (ECF 55 at 4–6; ECF 92 at 5–6; ECF 107 at 3–4).

The court finds that Defendant has established that its source code contains trade secrets. "[I]t is well-recognized among lower courts that source code requires additional protections to prevent improper disclosure because it is often a company's most sensitive and most valuable property." *Drone Technologies, Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016) (citing *Via Vadis Controlling GmbH v. Skype, Inc.*, No. Civ. A. 12-MC-193, 2013 WL 646236, at *3 (D. Del. Feb. 21, 2013) (noting that in "U.S. litigation, extreme measures are ordered to protect [source code] confidentiality")). Because of this, "district courts regularly provide for additional restrictions on discovery to account for the unique characteristics of source code." *Id.* Defendant has adequately demonstrated that its source code contains both sensitive and valuable information that merits additional protection through an AEO designation. Though Plaintiff

8

makes much of the requirement that good cause must be demonstrated for each document, the court does not interpret this requirement as requiring Defendant to explain why each line of code in its source code is confidential. Rather, the authority cited by Defendant explains that source code is uniquely deserving of heightened protection when, as here, it contains sensitive and valuable proprietary information. Plaintiff has not identified any authority demonstrating otherwise.

The court also finds that Defendant has demonstrated that inadvertent disclosure of its source code would be harmful. "[T]here may be circumstances in which even the most rigorous efforts of the recipient of [sensitive] information to preserve confidentiality in compliance with . . . a protective order may not prevent inadvertent compromise." *See In re Deutsche Bank*, 605 F.3d at 1378. For instance, in *Drone Technologies*, the Federal Circuit vacated an order to produce source code where the district court failed to "compare[] the needs of the case with both the burden . . . to produce 'all source code' and the significant consequences that might result from unauthorized or inadvertent disclosure." 838 F.3d at 1300 n.13. As noted by Defendant, the court has ordered Defendant to produce complete source code for its mobile application as requested by Plaintiff (ECF 103). The court finds that both the risk and harm of inadvertent disclosure are heightened in this case where all of Defendant's source code has been produced.

For these reasons, the court **GRANTS** Defendant's Motions to Maintain Protective Order Designations (ECF 52; ECF 84).

    2.   Plaintiff's Motion to Amend Standard Protective Order

"The party seeking to modify a protective order bears the burden of showing good cause for the modification," which, as interpreted by the Tenth Circuit, "requires the showing of a reasonable need." *Brigham Young University v. Pfizer, Inc.*, 281 F.R.D. 507, 510 (D. Utah 2012)

(citing *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1426 (10th Cir. 1990)). In patent cases involving in-house counsel, the Federal Circuit has recognized that relevant considerations include: (1) whether in-house counsel is a competitive decisionmaker; and (2) the risk of prejudice to the party represented by in-house counsel. *See In re Deutsche Bank*, 605 F.3d at 1379–81. The court will consider each issue in turn.

       *a)*  *Competitive Decision-Making*

The *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984) case is "the leading authority on protective orders distinguishing between outside and in-house counsel." *See Brown Bag Software*, 960 F.2d at 1470. The *U.S. Steel* case recognized that "[w]hether an unacceptable opportunity for inadvertent disclosure exists . . . must be determined . . . on a counsel-by-counsel basis" and that a key factor is whether "in-house counsel are involved in competitive decision-making." 730 F.2d at 1468. Under *U.S. Steel*, "competitive decision-making" is defined as "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product decision, etc.) made in light of similar or corresponding information about a competitor." *Id.* at 1467 n.3.

Defendant argues that Plaintiff's in-house counsel's licensing activities constitute competitive decisionmaking (ECF 93 at 4; ECF 113 at 3–6). Indeed, several courts have found that counsel's "[i]nvolvement in a party's licensing activity . . . implicates competitive decisionmaking." *See Northbrook Digital, LLC v. Vendio Services, Inc.*, 625 F. Supp. 2d 728, 760 (D. Minn. 2008); *see also Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (finding that in-house counsel's "involvement in licensing through litigation constitutes competitive decisionmaking, because her advice and counsel necessarily affect

licensing decisions"); *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, No. 6:07-cv-346, 2008 WL 5634214, at *5 (E.D. Tex. Mar. 14, 2008) (finding that where a patent-holding company's business model "revolves around the acquisition, enforcement (through litigation), and licensing of patents . . . , it is difficult to argue that . . . [counsel], who is so heavily involved in these aspects of the business, is somehow not a competitive decisionmaker").

The court agrees with Defendant that cases relied upon by Plaintiff are distinguishable either because they do not discuss licensing, *see Motorola Inc. v. Interdigital Tech Corp.*, 1994 WL 16189689 (D. Del. Dec. 19, 1994); *Pinterest, Inc. v. Pintrips, Inc.*, No. 13-cv-04608-RS(KAW), 2014 WL 5364263 (N.D. Cal. Oct. 21, 2014), or because they involve licensing activities more limited than those in the case at hand, *see Live Eyewear, Inc. v. Biohacked, Inc.*, No. CV 19-461-FMO, 2019 WL 8955426 (C.D. Cal. July 23, 2019). Though Plaintiff is not a direct competitor to Defendant, the court finds that Plaintiff's in-house counsel is nonetheless a competitive decisionmaker because of his licensing activities. This is not a case where in-house counsel engages in only limited licensing activities as in *Live Eyewear*, but rather, Plaintiff's entire business model revolves around the licensing of patents through litigation with the assistance of its in-house counsel as in *ST Sales Tech*. Under these circumstances, there would be a significant risk of inadvertent disclosure of confidential information if Plaintiff's in-house counsel is allowed to access this information.

### b) Risk of Prejudice

Courts have found that "institutional and other specialized knowledge is sufficient to show a compelling need for access to confidential information that outweighs the risk of inadvertent disclosure." *Javo Beverage Co., Inc. v. California Extraction Ventures, Inc.*, No. 19-cv-1859-CAB-WVG, 2020 WL 2062146, at *4 (S.D. Cal. Apr. 29, 2020). However, "[r]equiring

a party to rely on its competent outside counsel does not create an 'undue and unnecessary burden.'" *See Intel Corp.*, 198 F.R.D. at 529 (quoting *A. Hirsh, Inc. v. United States*, 657 F. Supp. 1297, 1303 (C.I.T. 1987)). Rather, "[t]he protective order must actually prejudice presentation of the moving party's case, not merely increase the difficulty of managing the litigation." *Id.* at 528.

Here, Plaintiff argues that even if its in-house counsel is a competitive decisionmaker, his specialized knowledge, the risk of financial hardship to Plaintiff, and the ability to mitigate the risk of disclosure through an amended protective order establish good cause to allow access (ECF 107 at 6–7). Defendant responds that Plaintiff has access to competent outside counsel and has otherwise failed to show good cause to amend the protective order (ECF 113 at 6). The court acknowledges that Plaintiff's in-house counsel has specialized knowledge as a software engineer and institutional knowledge regarding the Patent-in-Suit. However, the fact that Plaintiff has competent outside counsel and could hire outside experts reduces the risk of prejudice to Plaintiff. Even if reliance on outside counsel and experts causes some financial hardship, the normal burdens of patent litigation are insufficient to outweigh the significant risk of inadvertent disclosure of confidential information in this case. Further, amending the protective order would be insufficient to mitigate this risk because, as explained above, this heightened risk remains even with the existence of a protective order. *See In re Deutsche Bank*, 605 F.3d at 1378 (noting that "a protective order may not prevent inadvertent compromise"). The court has carefully balanced the conflicting interests in this case and concludes that the risk of inadvertent disclosure outweighs the risk of prejudice to Plaintiff. The court therefore declines to modify the standard protective order or the confidentiality designations therein.

For these reasons, the court **DENIES** Plaintiff's Motion to Amend the Standard Protective Order (ECF 87).

## II. CONCLUSION

In summary, IT IS HEREBY ORDERED that

(1) Defendant's Motion to Compel Settlement Agreements (ECF 63) is GRANTED IN PART and DENIED IN PART. Plaintiff must supplement its response to Defendant's Request for Production No. 9 within fifteen days (15) of the date of this order;

(2) Defendant's Motions to Maintain Protective Order Designations (ECF 52; ECF 84) are GRANTED; and

(3) Plaintiff's Motion to Amend the Standard Protective Order (ECF 87) is DENIED.

IT IS SO ORDERED.

DATED this 3 February 2021.

_/s/ Cecilia M. Romero_
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah